## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Hailey Lechner, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Civil Action No. _____ |
| v. | CLASS ACTION |
| EVENFLO COMPANY, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II. PARTIES ................................................................................................... 5

    A.  Plaintiff ............................................................................................ 5

        1.  Pennsylvania Plaintiff ............................................................ 5

            a.  Hailey Lechner ............................................................ 5

    B.  Defendant ........................................................................................ 6

III. JURISDICTION AND VENUE ................................................................ 6

IV. FACTUAL ALLEGATIONS .................................................................... 7

    A.  The market for children's car safety seats ....................................... 7

    B.  Development, testing, and marketing of the Big Kid booster seat ........................ 9

        1.  Evenflo develops a fraudulent test to burnish its marketing.................... 11

        2.  Despite conclusive evidence that its products are dangerous, Evenflo markets its new Big Kid model as "side impact tested" and safe for children under 40 pounds. ........................... 16

    C.  At the same time it was manufacturing dubious side-impact test results and touting its products' passage of those tests, Evenflo was disregarding scientific consensus—and its own engineers' recommendations—by encouraging parents to put children below 40 pounds in booster seats. ................................................................. 21

    D.  In response to ProPublica's reporting, Congress has launched an investigation into Evenflo's conduct, and two senators have called on NHTSA to finalize car seat test rules............................................. 28

    E.  Had Evenflo disclosed the results of its side-impact testing to the public, no parent or guardian would have purchased a Big Kid booster seat—particularly those whose children weigh less than 40 pounds. ........................................................................................ 31

V.  TOLLING OF THE STATUTE OF LIMITATIONS.................................. 32

    A.  Discovery Rule Tolling................................................................... 32

B.    Fraudulent Concealment Tolling ........................................................ 33

C.    Estoppel.............................................................................................. 33

VI.    CLASS ALLEGATIONS ............................................................... 33

A.    Claims Brought on Behalf of the Pennsylvania Subclass.................... 36

COUNT I: VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW (73 PA. CONS.
STAT. § 201-1 ET SEQ.) ................................................................ 36

B.    Claims Brought on Behalf of the Multistate Class ............................. 39

COUNT II: VIOLATION OF VARIOUS CONSUMER PROTECTION LAWS..................... 39

COUNT III: FRAUDULENT CONCEALMENT.................................................... 44

REQUEST FOR RELIEF ............................................................................ 45

DEMAND FOR JURY TRIAL ...................................................................... 46

Plaintiff Hailey Lechner, on behalf of herself and all others similarly situated, in this action against Defendant Evenflo Company Inc., alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

## I.    INTRODUCTION

1.    A consumer products company, especially one that sells products that purport to mitigate the risk of injury and death to children involved in car accidents, must be completely truthful about the safety and efficacy of its products and must back its claims of safety and safety testing with valid science. Such a company must not create false and misleading messaging about its products in the naked search for profits. This case arises because Defendant Evenflo Company, Inc. ("Evenflo") broke these simple rules. To better compete with its archrival Graco, Evenflo labeled and advertised its "Big Kid" booster seats as "side impact tested" and safe for children as small as 30 pounds. But Evenflo's tests were self-created and entirely unrelated to the actual forces in side-impact collisions. Legitimate science and legitimate testing reveals that the Big Kid booster seats provide dubious benefit to children involved in side-impact collisions, especially those under 40 pounds.

2.    In 2018, side-impact crashes were responsible for more than a quarter of deaths in vehicle collisions of children under 15. Though less common than head-on crashes, side-impact collisions are more likely to result in serious harm—including traumatic brain injuries, spinal injuries, and atlanto-occipital dislocation ("AOD"), which occurs when the ligaments attached to the spine are severed.[1]

---

[1] According to a 2015 study, AOD (sometimes referred to as "internal decapitation") is "3 times more common in children than in adults" because, compared to adults, children have proportionally larger heads and laxer ligaments. Graham Hall et al., *Atlanto-occipital dislocation*, 6(2) WORLD J. ORTHOPEDICS 236–243 (2015), available at https://www.ncbi.nlm.nih.gov/pubmed/25793163.

3.      Since the early 2000s, various states' laws have mandated the use of car seats for children. Though these laws vary in their specifics, they share a simple purpose: to prevent injury by ensuring that children are properly, and safely, restrained. However, while federal rules govern car seats' required crashworthiness in head-on collisions, neither individual states nor the federal government have developed side-impact testing rules for child safety seats.

4.      As a result, when assessing side-impact crashworthiness, parents and guardians are left to rely on the claims of seat manufacturers—who compete fiercely with one another for sales. Among the major players in the child safety seat market is Evenflo, which manufactures and sells a range of juvenile products including car seats, strollers, high chairs, and infant carriers.

5.      Evenflo—in a cynical ploy to out-compete its main rival, Graco—intentionally misrepresents the safety of its products to parents and other consumers. Specifically, Evenflo prominently markets one of its most popular products, the "Big Kid" booster seat, as "side impact tested" and, until recently, as safe for children as light as 30 pounds. But these claims are false: Evenflo's own testing demonstrates that the Big Kid booster seat leaves children—especially those under 40 pounds—vulnerable to serious head, neck, and spine injuries in a side-impact crash.

6.      On its website and in its marketing, Evenflo tells parents and guardians that its in-house side-impact testing is "rigorous," simulates realistic conditions, and is equivalent to federal testing. In reality, Evenflo's tests are anything but: videos reveal that when child-sized crash dummies seated in Big Kid booster seats are subjected to the forces of a T-bone collision, they are thrown far out of their shoulder belts.

7.      In fact, the bar for "passing" Evenflo's testing is so low that there are only two ways to fail: (1) if a child-sized dummy ends up on the floor or (2) the booster seat itself breaks into

pieces. The following video still is from a side-impact test "passed" by Evenflo's Big Kid booster seat:



8.     Evenflo's top booster seat engineer has admitted that when children move in the manner depicted in the video, they can suffer catastrophic head, neck and spinal injuries, or die. But for more than 10 years, and despite possessing knowledge of its products' unequivocal dangers, Evenflo has marketed its side-impact testing as "rigorous," and has stated publicly that its "test simulates the government side-impact tests conducted for automobiles." To date, Evenflo continues to prominently advertise its products as "side impact tested," going so far as to stich a "side impact tested" label into many of its seats' backs:



9.     In other words, only by creating a test that has no basis in science or safety—then concluding its products "pass" that test—can Evenflo aggressively market its Big Kid booster seats as "side-impact tested."

10.     Evenflo's dishonesty and deceptive marketing strategy has been phenomenally successful: since launch, Evenflo has sold more than 18 million Big Kid booster seats, making the product one of the best-selling models in the United States. It has likely earned hundreds of millions of dollars of profits on these dubious safety products that are, in reality, a mere shadow of what Evenflo claims.

11.    As a consequence of its cynical profiteering, Evenflo has now subjected millions of children to the risk of grave injury and death. Meanwhile, it continues to hold itself out to the public as keenly concerned with children's safety. According to Sarah Haverstick, a "Safety Advocate" and "Child Passenger Safety Technician" at Evenflo, "safety is a word that is embedded into [Evenflo's] DNA and will always be our number one priority for our customers."

12.    Had Evenflo disclosed the results of its side-impact testing to the public, no parent or guardian would have purchased a Big Kid booster seat. Instead, Evenflo kept these tests secret, and embarked on a disinformation campaign aimed at convincing millions that its Big Kid booster seats are safe.

13.    Plaintiff brings this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased a "Big Kid" booster seat manufactured by Evenflo between 2008 and the present. Plaintiff brings this action for violation of relevant state consumer protection acts and for fraudulent concealment on behalf of state classes of Big Kid booster seat owners. Plaintiff seeks damages and equitable relief on behalf of themselves and all others similarly situated.

## II.    PARTIES

**A.    Plaintiff**

**1.    Pennsylvania Plaintiff**

**a.    Hailey Lechner**

14.    Plaintiff Hailey Lechner is a Pennsylvania citizen residing in Pulaski, Pennsylvania.

15.    Plaintiff Lechner purchased a Big Kid booster seat for her daughter in 2017 at a KMart located in New Castle, Pennsylvania.  Plaintiff Lechner recalls seeing Evenflo's "side-impact tested" labeling on the seat's box at the time of purchase, and relied on these representations in making her purchase decision.  Plaintiff Lechner also purchased the seat because it was marketed

for children weighing thirty pounds or more.  At the time, Plaintiff Lechner's daughter weighed approximately thirty pounds.

16.     Plaintiff Lechner recalls that her daughter never appeared to sit in the seat properly, and that the seat seemed cheaply made.  In 2017, Plaintiff Lechner was in a car accident that resulted in her car being totaled.  Following the crash, Plaintiff Lechner disposed of her Evenflo seat and purchased a higher quality one, for which she was reimbursed by her insurance company.

17.     Had Plaintiff Lechner known about the defective nature of Evenflo's Big Kid booster seats, she would not have purchased them and instead would have purchased one of many safer available alternatives.

**B.      Defendant**

18.     Defendant Evenflo Company, Inc., is a Delaware corporation, and is a wholly-owned subsidiary of Goodbaby International Holdings Limited. Evenflo is headquartered in Canton, Massachusetts.

19.     In this Complaint, when reference is made to any act, deed or conduct of Evenflo, the allegation means that it engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Evenflo.

### III.      JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.

21.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant is a resident of Canton, Massachusetts, which is located in this judicial district.

## IV.    FACTUAL ALLEGATIONS

### A.    The market for children's car safety seats

22.    Though models vary, the market for children's car safety seats is generally grouped around three basic designs that track, sequentially, with children's growing weights and heights: rear-facing seats, forward-facing seats with harnesses, and belt-positioning booster seats.

23.    According to the American Academy of Pediatrics' ("AAP") most recent evidence-based, best practices for optimizing passenger safety:

> a.    All infants and toddlers should ride in a rear-facing car safety seat as long as possible, until they reach the highest weight or height allowed by their manufacturer. Most convertible seats have limits that will permit children to ride rear-facing for 2 years or more.

> b.    All children who have outgrown the rear-facing weight or height limit for their seat should use a forward-facing seat with a harness for as long as possible, up to the highest weight or height allowed by their manufacturer.

> c.    All children whose weight or height is above the forward-facing limit for their should use a belt-positioning booster seat until the vehicle lap and shoulder seat belt fits properly, typically when they have reached 4 ft 9 inches in height and are between 8 and 12 years of age.[2]

24.    While car seat recommendations have changed, the AAP has long embraced one central principle: parents should not move children from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat. Specifically, since the early 2000s, the AAP has advised that children who weigh 40 pounds or less—at the time, the weight limit of most harnessed seats—are best protected in a seat with its own internal harness. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch, and some fit children up to 90 pounds.

---

[2] *See* Dennis R. Durbin et al., *Child Passenger Safety*, 142(5) PEDIATRICS (2018), available at https://pediatrics.aappublications.org/content/142/5/e20182460.

25.    And even this 40-pound threshold is no longer considered ideal. Since 2011, the AAP has recommended (consistent with the above) that children stay in harnessed seats "as long as possible"—that is, in many cases, until they are 65 pounds (and in some cases up to 90 pounds).

26.    These thresholds are crucial because, according to scientific consensus, booster seats do not adequately protect toddlers. To deliver its full safety benefit in a crash, an adult seat belt must remain on the strong parts of a child's body—i.e., across the middle of the shoulder and the upper thighs. Furthermore, even if young children are tall enough for a belt to reach their shoulders, they rarely sit upright for long and often wriggle out of position.

27.    By contrast, a tightly adjusted five-point harness secures a child's shoulders and hips, and goes between the legs. Harnesses secure children's bodies so that they are less likely to be ejected, and they disperse crash forces over a wider area. This difference is illustrated by the following video stills, which are taken from comparison tests of the Evenflo "SecureKid," a seat that can accommodate a child up to 65 pounds with an internal harness, and the Evenflo Big Kid:




28.    In the test of the SecureKid, the dummy's head and torso remained entirely within the seat's confines. By contrast, in the test of the Big Kid, the seat belt slipped off the dummy's shoulder, and the dummy's head and torso flailed far outside the seat.

29.    Although this latter test "passed" Evenflo's side-impact testing, Evenflo's director of manufacturing engineering has previously admitted that it placed the dummy's neck in severe extension, and thus more at risk for injurious head contact.

30.    Data bears out what the above image makes plain: compared with seat belts, child restraints, when not misused, are associated with a 28% reduction in risk of death adjusting for seating position, vehicle type, model year, driver and passenger ages, and driver survival status.[3]

**B.    Development, testing, and marketing of the Big Kid booster seat**

31.    Evenflo first launched its Big Kid booster seat in the early 2000s, with the goal of "regaining control in the market" for booster seats from its main competitor, Graco, which had recently released a popular model called the "TurboBooster."

32.    At the time of the Big Kid's development, Evenflo's team proposed creating a booster seat with similar features to Graco's TurboBooster, but priced to sell for about $10 less— or between $40 and $50. Though some car seats sell for well more than this, Evenflo sought to develop a product that would sell briskly at large retailers (e.g., Walmart, Target, Costco, Babies R Us, Amazon). Evenflo succeeded. Within a few years, an internal design review deemed the Big Kid "the reliable workhouse in the Evenflo platform stable."

33.    But in spite of this success, by 2008, Graco was still outselling Evenflo. So, that year, Evenflo launched a new Big Kid booster seat with so-called "side wings"—that is, curved extensions on either side of the headrest. Below are the Big Kid (left) and TurboBooster (right):

---

[3] *See* Michael R. Elliott et al., *Effectiveness of child safety seats vs seat belts in reducing risk for death in children in passenger vehicle crashes*, 160(6) ARCH PEDIATR. ADOLESC. MED. 617– 621 (2006), available at https://www.ncbi.nlm.nih.gov/pubmed/16754824.



**Big Kid**          **TurboBooster**

34.    The addition of these "wings" was cynical: Evenflo's engineers believed the Big

Kid's relative "on-shelf perception" was diminished because Graco's seat looked like it had more

side support, and thus the Big Kid required an aesthetic upgrade to stay competitive. An Evenflo

document makes this explicit: it states that one purpose of the new side wings was "increased

perceived side protection" among consumers. Consistent with this, Evenflo's own side-impact

testing showed no difference in safety between the two models:



1. **Evenflo develops a fraudulent test to burnish its marketing.**

35.     As part of its quest to gain an upper hand on Graco—and to enhance the perceived safety of the Big Kid—Evenflo also began to "test" the side-impact crashworthiness of its new Big Kid prior to its 2008 release.

36.     But in the absence of a federal standard, Evenflo had a unique opportunity: it could develop its own test, then use "passage" of that test as a means by which to distinguish its new product from the competition.

37.     Evenflo has represented publicly that its side-impact testing is "rigorous" and analogous to "government" tests. For example, according to a blog post authored by Sarah Haverstick, a "Safety Advocate" and "Child Passenger Safety Technician" at Evenflo, "the engineers at Evenflo have designed the Evenflo Side Impact Test protocol" as a "rigorous test [that] simulates the government side impact tests conducted for automobiles:"

## Making the Transition – How to Choose a Booster Seat



There are so many booster seat options on the market it can be hard to know where to start when shopping for this important piece of safety equipment. Here are some tips to make the experience a little easier.

**First - don't transition your child too early.** At a minimum, your child should be 4 years old to use a booster seat. Your child must be mature enough to sit in the booster seat with the seat belt in the proper position – without putting it under their arm, behind their back or slouching.

**Next – make sure your child actually fits in the booster.** Belt positioning booster seats are all about proper seat belt fit. Booster seats are designed to make your child a little taller so they can use the lap/shoulder seat belt, which is made to fit an adult. The lap belt should be low and snug across the hips (not across the belly) and the shoulder belt should cross the chest and shoulder (not the neck and face). Every booster seat fits in every vehicle differently, so ideally, ask the store if you can bring it out to your car to test for fit with your child.

Once you have proper belt fit – there are many other features you can look for:

**Extended Use**

Combination car seats are forward-facing only car seats that allow you to use a harness for your child and then remove the harness to use the seat as a booster. Upper weight limits on the harness will vary. Using a car seat with a higher weight rating for the harness (over 40 pounds) will help delay your child's transition into a booster seat.

**High Back Booster vs. No Back Booster**

You will need a high back booster if your vehicle does not have a headrest for the seating position that your child will be using (fairly uncommon with most newer vehicles, but more common in older vehicles or pickup trucks). Otherwise, high back boosters are a great option when first transitioning a child to a booster, and are also helpful if your child is prone to napping in the car. No back boosters are great options for travel, or to have on hand in case you frequently car pool with other booster-age kids, since they are compact and easy to store.

**Lower Anchors**

Combination seats will often allow the use of the lower anchors and tether when the seat is used in booster mode. When used with a booster, lower anchors are not designed to help with crash safety for the child (the seat belt protects the child in a crash – which is why it is important that it fits right). However, the lower anchors do keep the booster seat in the same place. This is helpful when your independent child wants to climb in and buckle the seat belt on their own. The lower anchors are also helpful in keeping the booster seat tied down when not in use so it does not become a projectile in a crash. That way you do not need to remember to buckle the seat in every time it is not in use.

**Side Impact Testing**

Currently, there is no federal standard for side impact testing of car seats and booster seats. However, the engineers at Evenflo have designed the Evenflo Side Impact Test protocol. This rigorous test simulates the government side impact tests conducted for automobiles.

**Cool factor!**

This might not sound as important – but as safety advocates, we know that booster seats have been proven to be more effective than seat belts alone for kids ages 4 through 8. But, we also know that older kids do not want to look (or feel) like babies in the car. To encourage kids to be excited about using boosters, Evenflo has added fun colors, cup holders and even lights and speakers in some booster seat models. If possible, bring your child with you when you are shopping for their new seat. Allowing them to help with the decision may make them more interested in using the seat.

38.     This claim is misleading at best. Evenflo's side-impact test is performed by placing a product on a bench (resembling a car seat), moving that bench at 20 miles per hour, then suddenly decelerating it.

39.     In stark contrast, the National Highway Traffic Safety Administration's 5-Star Safety Ratings program evaluates vehicles based on their performance during two side-impact crash scenarios.[4]  In the first, designed to simulate an intersection-type collision, a 3,015 pound moving barrier is crashed at 38.5 miles per hour into a standing vehicle containing two dummies.[5] In the second, designed to simulate a crash into a telephone pole, a vehicle angled at 75 degrees (and containing the same two dummies) is pulled sideways at 20 miles per hour into a 25cm diameter pole at the driver's seating location. Following both tests, injuries to the dummies' heads, chest, lower spine, abdomen, and pelvis are evaluated.

40.     This difference is nowhere apparent in Evenflo's marketing materials, nor is it explained on Evenflo's website. To the contrary, a section of Evenflo's website devoted to "Safety Technology"[6] states:

> [A]t Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard. We also continually enhance our products with new technologies that distribute crash forces away from your child during a crash. Some of those technologies include . . .
>
> - Side Impact Tested: Meets or exceeds all applicable federal safety standards and Evenflo's Side [sic] impact standards.

---

[4] A description of this rating system can be found on NHTSA's website, *see* https://www.nhtsa.gov/ratings.

[5] In these tests, the first dummy is an average-size adult male in the driver's seat, and the second is a small-size adult female in the rear driver's side passenger seat.

[6] Evenflo, "Safety Technology," https://www.evenflo.com/safety-learning/safety-tech.html (last accessed Feb. 9, 2020).

41.    The same page includes the following descriptions of Evenflo's side-impact testing:

**Evenflo Side Impact Testing**

Evenflo Side impact testing simulates a crash in which the vehicle carrying the car seat is struck on the side by another vehicle. An example of a real life side impact collision is when a car crossing an intersection is struck on the side by another car that ran a stop sign.

**Why is it important to car seat safety?**

Approximately one out of four vehicle crashes have a side impact component. According to the National Highway Traffic Safety Administration (NHTSA), impacts to the side of the vehicle rank almost equal to frontal crashes as a source of fatalities and serious injuries to children ages 0 to 12.

**How are car seats tested now?**

Federal car seat safety standards require a frontal impact test with a 30 mph velocity change. This approximates the crash forces generated in a collision between a vehicle traveling 60 mph and a parked car of similar mass, or the energy produced in a fall from a three story building. There are currently no provisions in the U.S. and Canadian standards for side impact testing. NHTSA is in the process of developing a child side impact test standard.

**What is the Evenflo Side Impact Testing?**

At Evenflo, car seat safety is a top priority. That's why we have created the Evenflo Side Impact test protocol. The Evenflo Side Impact test protocol was developed by Evenflo engineers using state-of-the-art facilities. The rigorous test simulates the energy in the severe 5-star government side impact tests conducted for automobiles.

All Evenflo car seats meet or exceed all applicable federal safety standards and Evenflo's side impact standards.

For car seat safety that you can depend on, trust Evenflo. Shop our collection of side impact tested car seats today.

42.    Furthermore, not only is Evenflo's side-impact test less rigorous than the federal government's test. It is, for all intents and purposes, impossible to fail.

43.    Records of Evenflo's internal side-impact tests of various models indicate that, following each test, an Evenflo technician (1) answers whether the test showed "dummy retention," which is indicated by checking either "yes" or "no" on a form, then (2) sends her report to an engineer who, in turn, (3) decides whether the Big Kid model passes or fails.

44.    But an Evenflo senior test technician has admitted that, for purposes of these forms, "dummy retention" means the following: "did [the dummy] stay in the seat or did it fall out of the seat and end up on the floor?"

45.    In other words, there are only two ways to fail Evenflo's "rigorous" side-impact test: (1) if a child-sized dummy escapes its restraint entirely, and thus ends up on the floor; or (2) the booster seat itself breaks into pieces.

46.    The same technician has stated that, in 13 years, he did not once perform a "failed" side-impact test on a booster seat. He also testified that the following images—all of which are from "passed" Evenflo side-impact tests, and use a dummy based on a three-year-old child—would have been marked "yes:"






47.    These images show the seat belt slipping off the dummy's shoulders and instead tightening around its abdomen and ribs. This kind of violent movement at high speed can cause serious damage to a child's internal organs, head, neck and spine, including paralysis or death.

48.    Evenflo was aware of these risks. A safety engineer at Evenflo has admitted under oath that, when real children move in this way, they are at risk for injurious head contact.

49.    In other words, the same proprietary side-impact tests deemed successful by Evenflo's engineers demonstrate, unequivocally, that Big Kid booster seats place many children at risk of serious injury or death.

2. **Despite conclusive evidence that its products are dangerous, Evenflo markets its new Big Kid model as "side impact tested" and safe for children under 40 pounds.**

50.    Upon learning from its own pre-release tests that its Big Kid booster seats place many children at serious risk in side-impact collisions, Evenflo could have redesigned them. Or, it could have engaged in further testing to determine the minimum age and weight age at which a child can safely use a Big Kid booster seat (i.e., the point at which the seatbelt no longer slips from a child's shoulders in a side-impact collision), and revised its packaging and marketing accordingly. As noted above, current evidence-based best practices dictate that parents should not move children from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat. And at a minimum, pediatricians recommend that no child should use a booster seat until he or she weighs at least 40 pounds—though even this standard has now been replaced by recommendations suggesting keeping children in harnessed seats until 65, or even 90, pounds.

51.    Instead, Evenflo kept these tests secret.[7]

52.    And not only that: beginning in 2008, Evenflo began aggressively marketing its Big Kid booster seats as "side impact tested" to both businesses and consumers. For example, Evenflo sent marketing materials to Walmart, Target, and Babies R Us that emphasized in large bold letters that its new Big Kid booster seat was "side impact tested."   Other marketing materials stated:

---

[7] The above description of Evenflo's testing is based on an exposé by the nonprofit organization ProPublica, which published an investigation into Evenflo's testing and marking of the Big Kid booster seat on February 6, 2020. *See* Daniela Porat and Patricia Callahan, *Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, PROPUBLICA (Feb. 6, 2020), available at https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety. Prior to the ProPublica story, consumers had no way of obtaining photos, video, or any other data from Evenflo's side-impact testing, which was only produced in the course of ongoing, separate litigation against the company.

"Knowing that one in four automobile accidents are side impact collisions, we believe it's important to go beyond the current government standards when designing the next generation of Evenflo car seats, including the Big Kid LX."

53.     Evenflo took—and continues to take—a similarly aggressive tack with consumers. As noted above, the company prominently advertises its Big Kid models as "side impact tested." The following screen shots are from several websites on which the Big Kid is available for sale, including Evenflo's own website:

Evenflo's website:



Amazon:

**Product description**

Color:Denver

Product Description

The Evenflo big kid AMP belt-positioning booster car seat gets your child excited about sitting in a booster seat. With 6 height positions, the back adjusts as your child grows, keeping the side and head support in the proper position. It also transitions into a no-back booster. Your child will love the comfortable padding around the head and body. Elastic cup holders are perfect for a juice box or a quick snack. With Backrest : Height recommendation : 112 to 145 cm (44 to 57 in.) and tops of the child's ears are at or below the top of the booster seat headrest . At least 4 years old Without Backrest : Weight recommendation : 112 to 145 cm (44 to 57 in.) and tops of the child's ears are at or below the top of the vehicle seat headrest . At least 4 years old

**Safety Testing:**

At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.

- **Side Impact Tested**: Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards.
- Designed and tested for structural integrity at energy levels approximately **2X the federal crash test standard**.
- **FMVSS 213**: Federal Motor Vehicle Safety Standards for Child Restraint Systems
- **FMVSS 302**: Federal Motor Vehicle Safety Standards for Flammability of Interior Materials
- **CMVSS 302**: Canada Motor Vehicle Safety Standard
- **CMVSS 213**: Canada Motor Vehicle Safety Standard
- **Evenflo Temperature Testing**: All current Evenflo car seats are tested for product integrity at both high and low temperatures.

Walmart:

## About This Item

**We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

The Evenflo Big Kid Sport Booster Car Seat gets your child excited about sitting in a booster seat! With 6 height positions, the back adjusts as your child grows, keeping the side and head support in the proper position. It also transitions into a no-back booster. Your child will love the comfortable padding around the head and body. The dual cup holders will keep drinks and snacks close. **Evenflo Big Kid Sport High Back Booster Seat, Peony Playground:**

- 2 Seats In 1 ? removable back for easy transition to a no-back booster
- Easy one-hand, 6-position height adjustment to accommodate growing children longer
- 2 cup holders for drinks
- Machine-washable pad keeps seat looking clean
- Side Impact Tested: meets or exceeds all applicable Federal Safety Standards and Evenflo's Side Impact Test Standard
- Designed and tested for structural integrity at energy levels: approximately 2X the federal crash test standard
- Energy absorbing foam liner provides added safety and comfort
- For use as high back booster (with backrest)
- Weight: 40 - 100 lbs
- Height: 44 - 57"
- Age: child is at least 4 years old or older
- Child's ears are below top of child restraint headrest
- For Use as No Back Booster (without backrest)
- Weight: 40 - 100 lbs
- Height: 44 - 57"
- Age: child is at least 4 years old or older

**Questions about product recalls?**

Items that are a part of a recall are removed from the Walmart.com site, and are no longer available for purchase. These items include Walmart.com items only, not those of Marketplace sellers. Customers who have purchased a recalled item will be notified by email or by letter sent to the address given at the time of purchase. For complete recall information, go to Walmart Recalls.

54.    The "side impact tested" label appears on the Big Kid's packaging:



55.     So committed to its "side impact testing" is Evenflo that it even stiches "side impact

tested" labels into the Big Kid seats themselves:





56.     Customer reviews for several Big Kid models confirm that parents and guardians rely on Evenflo's misrepresentations.



**C.    At the same time it was manufacturing dubious side-impact test results and touting its products' passage of those tests, Evenflo was disregarding scientific consensus—and its own engineers' recommendations—by encouraging parents to put children below 40 pounds in booster seats.**

57.    As noted above, the American Academy of Pediatrics has, since the early 2000s, advised that children who weigh 40 pounds or less are best protected in a seat with its own internal harness—which was then the weight limit of most harnessed seats. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch, and some fit children up to 90 pounds. Since 2011, the AAP has recommended that children stay in harnessed seats "as long as possible" (i.e., up to manufacturers' weight limits).[8]

58.    Consistent with this recommendation, many booster seat manufacturers in the United States now specify that, at a minimum, children should weigh at least 40 pounds before using their products. But others, including Evenflo, have long dragged their feet and (until recently) continued to market booster seats to children who weigh as little as 30 pounds.

59.    It was only following a recent journalistic exposé by the nonprofit organization ProPublica[9]—published on February 6, 2020—that Evenflo revised its website to state that the minimum weight for Big Kid booster seats is 40 pounds. According to Evenflo's general counsel, in May 2016, the company changed some, but not all, of its U.S. booster seats to a 40-pound minimum so that the company could sell them in Canada, which does not allow the sale of boosters

---

[8] For example, the company Britax offers a convertible harness/booster seat, the "Frontier ClickTight," that can accommodate children up to 90 pounds in harness mode. *See* https://us.britax.com/frontier-clicktight-forward-facing-only-seats/. Consistent with the AAP's recommendations, Britax advises customers that it "strongly recommends that children should be secured with a harness system until they exceed the weight or height limits specified."

[9] *See supra* note 7.

to children under 40 pounds.[10]   But the company otherwise left its minimum weight recommendation of 30 pounds intact to supposedly "provide options for parents whose children were too tall" for harnessed seats.

60.   In other words, before early 2020, the 30-pound standard often prevailed in Evenflo's sales materials, product descriptions, and product manuals for the Big Kid booster. For example, a screenshot of Evenflo's product page for the "Big Kid Amp Highback 2-in-1 Belt-Positioning Booster Car Seat" from July 21, 2019[11] lists a minimum weight of 30 pounds:



_____

[10] In fact, Big Kid boosters sold in Canada warn parents and guardians that children less than 40 pounds are at risk of "SERIOUS INJURY or DEATH" if placed in these seats.

[11] This product listing was retrieved from the Wayback Machine, a digital archive, and can be found at the following URL: http://web.archive.org/web/20190721134649/https://www.evenflo.com/car-seats/big-kid/31911431.html.

61.    Since ProPublica's reporting began, Evenflo's sudden updating of this standard has been so hasty and erratic that many of its Big Kid booster seats continue to be advertised as appropriate for children weighing as little as 30 pounds. For example, as of February 9, 2020, the "Big Kid High Back Booster Car Seat" was displayed on Kohl's webpage as appropriate for children weighing between 30 and 110 pounds:



62.    The same page also includes the following clarification (dated February 6, 2020) from an account that appears to be associated with Evenflo—presumably posted in haste on the same day the ProPublica exposé was published:



63.    Meanwhile, according to ProPublica's reporting, Big Kid booster seats ordered directly from Evenflo's website as recently as January 2020 came with boxes that did not specify an age for use, and bore labels stating that they were safe for children weighing as little as 30 pounds.

64.    As with Evenflo's "side impact tested" labeling, the company's longstanding decision to cling to the 30-pound minimum—in the face of scientific consensus to the contrary—had (and has) a cynical purpose: to sell more booster seats. For in marketing the Big Kid booster seat, Evenflo knows that parents often face complaints from children who see harnessed seats as babyish. Furthermore, parents have an incentive to choose booster seats because they are generally cheaper, less complicated to use, and easier to move.

65.    For this reason, Evenflo has historically resisted change at every turn—once again, in a bid to outcompete Graco and sell as many seats as possible.

66.    For example, when Evenflo first launched the Big Kid booster seat in the early 2000s, it marketed it as safe for children as young as one so long as they weighed 30 pounds—

without a minimum height. At the time, Graco labeled its competing booster seat as safe for children who weighed at least 30 pounds and were at least three years old.

67.    Evenflo's engineers have since conceded that neither one-year-olds nor two-year-olds should be placed in Big Kid booster seats, consistent with scientific consensus. In a 2016 deposition, Joshua Donay, an Evenflo project engineer who worked on the Big Kid, stated that he would "not put a one-year-old in any belt-positioning booster, Big Kid, Graco, you name it," and "would keep them in an infant seat." In a deposition in a different case, Evenflo's top booster seat engineer, Eric Dahle, acknowledged that two-year-olds should not be placed in Big Kid booster seats.

68.    But it was not until 2007 that Evenflo increased the minimum age on the Big Kid to three, and also added a minimum height requirement (38 inches). At the time, Evenflo warned consumers that failure to follow these instructions could "result in your child striking the vehicle's interior during a sudden stop or crash, potentially resulting in serious injury or death."

69.    In spite of this significant revision, Evenflo made no effort to notify past purchasers or to undertake any other remedial action, thus exposing millions of children under three and/or 38 inches to risk of serious injury or death.

70.    Evenflo's battle to maintain the 30-pound weight threshold was even harder fought.

71.    As noted above, in 2011, the AAP made the widely-publicized safety announcement that parents should keep their children in rear-facing child safety seats for as long as possible before transitioning them to forward-facing harnessed seats, and that switching children

to booster seats at 40 pounds was no longer recommended. NHTSA updated its guidelines shortly

thereafter to reflect the AAP's recommendations:[12]



72.     As reported by ProPublica, in early 2012, Dahl—that is, Evenflo's top booster seat

engineer—delivered a PowerPoint presentation to his colleagues in which he stated that three- and

four-year-old children are at an "increased risk of injury" in booster seats because, as a result of

their immaturity, they often do not sit properly. Dahle wrote that "[k]eeping the seat at 30 lbs

---

[12] *See* NHTSA, "NHTSA Releases New Child Seat Guidelines" (March 21, 2011), available at
https://one.nhtsa.gov/portal/site/NHTSA/menuitem.554fad9f184c9fb0cc7ee21056b67789/?vgne
xtoid=47818846139ce210VgnVCM10000066ca7898RCRD&vgnextchannel=c9f64dc9e66d5210
VgnVCM100000656b7798RCRD&vgnextfmt=default.

encourages parents to transition them earlier because they can, and the booster is a less expensive

option," and that Evenflo should discourage early transitions to booster seats in favor of keeping

children in harnessed seats longer: "[a harnessed seat] is the better option. We should encourage

that behavior by modifying the weight rating to 40 lbs. To overcome the misuse, we should follow

the NHTSA Guidelines and increase the age rating to 4 yrs old also."

73.    Dahle also sent his colleagues a 2010 NHTSA report on booster seat

effectiveness,[13] specifically noting two of the study's findings: (1) that three- and four-year-old

children had a reduced risk of injury in crashes when they were using harnessed seats rather than

boosters, and that early graduation to boosters may "present safety risks;" and (2) children should

remain in harnessed seats until they are four or weigh 40 pounds, and that harnessed seats may

offer more side support and "better containment" for smaller children in crashes.

74.    But in a meeting several days later, McKay Featherstone, an Evenflo senior

marketing director, "vetoed" Dahle's weight recommendations, though the company did agree to

raise the minimum age for Big Kid booster seats to 4. When the subject of increasing the weight

---

[13] A copy of NHTSA's July 2010 report, "Booster Seat Effectiveness Estimates Based on CDS and State Data," can be found at https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338.

The report is based on data from the National Automotive Sample System - Crashworthiness Data System (NASS CDS) from 1998-2008, as well as 17 combined years of state data from Kansas, Washington, and Nebraska, and estimated the effects of early graduation from child restraint seats to booster seats and of early graduation from booster seats to lap and shoulder belts. Among the report's principal findings was that "among three- and four-year-olds there is evidence of increased risk of injury when restrained in booster seats rather than with the recommended child restraints." The report notes that "[t]his increase depends on injury severity, and may be as large as 27 percent for non-disabling to fatal injuries."

The report also recommends that "[f]orward-facing (convertible or combination) child seats [be used] for children age 1 to 4, or until they reach 40 lbs." It explains: "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks. Child restraint seats may offer more lateral support and better containment for smaller children."

limit came up again later that year—this time raised by another employee—Featherstone (by then promoted to vice president of marketing and product development) wrote in an email:

> Gregg, why are we even talking about this?  It has always been this way in Canada so I don't understand why it is now a big problem that requires a $30k investment or us to change product. I have looked at 40 lbs for the US numerous times and will not approve this.

75.    Furthermore, even after Evenflo increased the Big Kid's age limit to four, it continued selling the old model with manuals dated 2008—according to which the seat was safe for three-year-olds.

76.    Incredibly, in a 2019 deposition, Jon Conaway, Evenflo's senior product manager for car seats, stated that he was unaware of any internal debate over weight limits. He also denied knowledge of NHTSA's updated 2011 recommendations, claiming that he first became aware of them during the deposition itself—i.e., when they were read to him by plaintiff's counsel in 2019.

**D.    In response to ProPublica's reporting, Congress has launched an investigation into Evenflo's conduct, and two senators have called on NHTSA to finalize car seat test rules**

77.    On February 12, 2020, in response to ProPublica's reporting, the United States House of Representatives' Subcommittee on Economic and Consumer Policy sent a letter to Jon Chamberlain, Evenflo's CEO, requesting documents and information on Evenflo's Big Kid model booster seats.[14]

78.    The letter, authored by representatives Raja Krishnamoorthi and Katie Porter, notes that Evenflo's marketing of its seats as "side impact tested" "appears to be inconsistent with the video evidence of side impact testing," and that Evenflo's internal tests "appear to show that side

---

[14] A true and correct copy of the letter is available at:
https://www.documentcloud.org/documents/6774691-2020-02-12-RK-to-Chamberlain-Evenflo-Re-Big-Kid.html.

impacts could put children sitting in the 'Big Kid' seat in grave danger." Krishnamoorthi and Porter also write: "Videos of Evenflo's side-impact tests for the 'Big Kid' seat show child-sized test dummies bending violently at the hip, torsos, and neck, as well as test dummy heads being thrown to the side. This video evidence appears to present a high risk of serious injuries to the head, neck, and spine."

79.  The letter demands that Evenflo produce the following by February 24, 2020:

1.  All impact test videos, including side-impact test videos; and

2.  All documents referring or relating to the following:

   a.  Labeling concerning the age, weight, and height of children for whom the seat is intended, including on marketing materials, packaging, instructional materials, or the seat itself;

   b.  Labeling of safety-related terms, including "Side Impact Tested," On marketing materials, packaging, instructional materials, or the seat itself;

   c.  Labeling of potential risks, including "Serious Injury or Death," on marketing materials, packaging, instructional materials, or the seat itself;

   d.  Safety and risk standards used by Evenflo in connection with side-impact testing, including what constituted a "passing" result; and

   e.  Actual results and records of impact and other safety testing; and

3.  All communications with the US. federal agencies referring or relating to safety standards; and

4.  All communications with Canadian regulators relating to any recall.

80.  On February 14, 2020, two days after Reps. Krishnamoorthi and Porter sent the above letter to Evenflo, Senator Tammy Duckworth, the Ranking Member of the Senate Commerce, Science and Transportation Subcommittee on Transportation and Safety, and Senator Maria Cantwell, the Ranking Member of the Senate Commerce, Science and Transportation Committee, sent a letter to NHTSA Acting Administrator James C. Owens "demanding answers

about reported negligence by a booster seat manufacturer [named] Evenflo."[15]   Among other

things, the letter requests that NHTSA "act swiftly to finalize a long overdue rule establishing

effective side impact performance requirements for all child restraint systems," and states that:

> There are real world consequences to [NHTSA's] inaction. For example,
> ProPublica reported the details of potential negligence of a booster seat
> manufacturer, Evenflo, in developing and marketing its "Big Kid" booster car seat
> product that may fail to protect children in side impact crashes, which accounted
> for an estimated 25 percent of vehicle collision fatalities for children under the age
> of 15 in 2018.

> Evenflo suggests that their car seat products meet or exceed all applicable Federal
> safety standards for side impact testing, a claim that appears misleading. Evenflo
> also asserts that their products meet the company's own side impact standards.
> However, alleged videos of side impact testing calls into question the level of
> protection these standards provide.

81.     Sens. Duckworth and Cantwell's letter also requests responses to the following

questions by March 4, 2020:

> 1.  On what date and in what manner did NHTSA first learn about concerns related
> to the safety performance of Evenflo booster seats in side impact collisions?

> 2.  Evenflo's website states that it provides car seats that are "Side Impact Tested:
> Meets or exceeds all applicable federal safety standards and Evenflo's Side impact
> standards." Please identify which applicable Federal Motor Vehicle Safety
> Standard (FMVSS) addressing side impact performance requirements Evenflo is
> citing, and confirm whether Evenflo consulted with NHTSA in establishing the
> company's side impact standards.

> 3.  Has Evenflo's "Big Kid" booster car seat ever failed NHTSA compliance testing
> under FMVSS 213?

> 4.  What actions has, or will, NHTSA take in coordination with the Federal Trade
> Commission and the Consumer Product Safety Commission to crack down on false
> and deceptive advertising by makers of child safety seats and booster seats?

---

[15] Press Release, Sen. Tammy Duckworth (Feb. 14, 2020), available at
https://www.duckworth.senate.gov/news/press-releases/duckworth-cantwell-demand-answers-
following-reports-that-major-child-car-seat-manufacturer-lied-about-safety-testing-and-
requirements-resulting-in-fatalities.  A true and correct copy of the above-referenced letter
accompanies Sen. Duckworth's press release.

5.  When will NHTSA publish a final rule creating a Federal Motor Vehicle Safety Standard that establishes effective side impact performance requirements for all child restraint systems?

**E.    Had Evenflo disclosed the results of its side-impact testing to the public, no parent or guardian would have purchased a Big Kid booster seat—particularly those whose children weigh less than 40 pounds.**

82.    Had Evenflo disclosed the results of its side-impact testing to the public, no parent or guardian would have purchased a Big Kid booster seat. As noted above, these tests demonstrate, unequivocally, that Big Kid booster seats place many children at risk of serious injury or death. Evenflo's engineers have admitted that they knew this.

83.    But rather than accept mainstream science—including both the AAP's and NHTSA's recommendations regarding child safety—Evenflo has spent more than a decade maximizing its profits by waging a disinformation campaign against parents and guardians, relentlessly telling them that Big Kid booster seats are "side-impact tested."  Meanwhile, Evenflo has fought tooth and nail any attempt to upgrade the weight limit for these seats to 40 pounds.

84.    Evenflo has apparently done no scientific testing to determine at what height or weigh, if any, it is actually safe to use a Big Kid booster seat. Though Evenflo could have treated its testing as an opportunity to answer this question—consistent with its stated commitment to making safety a "number one priority for our customers"—it has yet to do so.

85.    The result of this conduct is that, in reliance on Evenflo's misrepresentations and omissions, millions of parents and guardians have purchased Big Kid booster seats in the mistaken belief that their children will be protected during side-impact crashes. This means that, every day, millions of children are placed in Evenflo seats for which they are too young or too small. It is likely that many have been, and will be, injured as a result.

86.    Unquestionably, consumers who purchased the Big Kid booster seats did not get the benefit of the bargain they struck. They paid for a booster seat under the mistaken belief that

it was actually "side-impact tested," and that it was safe for children as small as 40 or even 30 pounds in the event of a side-impact collision. But they did not get that. They got a booster seat that, while touted as the product of a relentless drive for safety, was actually the product of a relentless and callous drive for profits—even at the risk of injury and death to children.

87.    Evenflo must be brought to task for its reprehensible behavior. Though it will never be able to make amends for untold number of children who have been injured or killed in its fraudulently marketed Big Kid booster seats, Evenflo should, at the very least, be forced to recall each and every Big Kid booster seat still in use and refund its purchase price.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

88.    Within the period of any applicable statutes of limitation, Plaintiff and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Evenflo's Big Kid booster seat models are unsafe in side-impact crash tests.

89.    Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Evenflo's Big Kid booster seat models are unsafe in side-impact crash tests, or that Evenflo's marketing of these seats as "side impact tested" was false and/or misleading. The information revealing Big Kid booster seat models to be unsafe was within Evenflo's sole possession, and was not known to the public until February 6, 2020, when ProPublica published the exposé discussed above. To the extent some of the information reported by ProPublica was previously disclosed as part of litigation, it was either sealed by court order or behind a paywall—specifically, CM/ECF's fee-based access system—and difficult for laypeople to find or access.

90.    Plaintiff and Class members could not have reasonably discovered the true extent of Evenflo's deception with regard to the safety of its Big Kid booster seats until ProPublica published its exposé.

91.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

**B.    Fraudulent Concealment Tolling**

92.    All applicable statutes of limitation have also been tolled by Evenflo's fraudulent concealment throughout the period relevant to this action of its internal testing.

93.    Instead of disclosing to consumers that, according to its own testing, children placed in Big Kid booster seats are at risk of serious injury or death in side-impact crashes, Evenflo continued to manufacture and sell these seats without disclosing this information. Instead, it affirmatively misrepresented the seats as "side-impact tested."

**C.    Estoppel**

94.    Evenflo was under a continuous duty to disclose to Plaintiff and the other Class members the risks of placing children in its Big Kid booster seats.

95.    Evenflo knowingly, affirmatively, and actively concealed or recklessly disregarded the true risks of placing children in these seats, and meanwhile affirmatively misrepresented them as "side-impact tested."

96.    Based on the foregoing, Evenflo is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ALLEGATIONS

97.    Plaintiff brings this action on behalf of herself and as a class action pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses (collectively, the "Class"):

**The Multistate Class**

All persons in any state who purchased an Evenflo "Big Kid" booster seat between 2008 and the present.

**The Pennsylvania Subclass**

All persons in the State of Pennsylvania who purchased an Evenflo "Big Kid" booster seat between 2008 and the present.

98.    Excluded from the Class is the Defendant and any entity in which the Defendant has a controlling interest, as well as any of the Defendant's legal representatives, officers, directors, assignees, and successors.

99.    Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. During the Class Period, millions of Big Kid models were sold to millions of individual customers. Class members are readily identifiable from information and records in the possession of Evenflo and third-party merchants like Amazon, Target, Walmart, Kmart, Costco, and Babies R Us.

100.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all Class members were damaged by the same wrongful conduct: as a result of Evenflo's failure to disclose the risks associated with using Big Kid booster seat models, as well as its false and misleading claims that these models were "side-impact tested," Plaintiff and Class members were misled into purchasing these seats—which they otherwise would not have purchased.

101.    Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

102.    Plaintiff's lead counsel are experienced in the prosecution of class-action litigation and have particular experience with class-action litigation involving defective products.

103.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Evenflo has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Evenflo's wrongful actions

104.     Questions of law and fact common to the Class include, but are not limited to:

A.     Whether the Big Kid booster seat models sold to class members by Evenflo are unsafe in side-impact crashes;

B.     Whether Evenflo knew, or had reason to know, that its Big Kid booster seat models were unsafe in side-impact crashes;

C.     Whether Evenflo acted to conceal from consumers evidence, including proprietary test data, demonstrating that its Big Kid booster seat models are unsafe in side-impact crashes;

D.     Whether Evenflo affirmatively misrepresented the safety of its Big Kid booster seat models as "side impact tested;"

E.     Whether Evenflo's conduct was knowing and willful;

F.     Whether Evenflo's failure to disclose the safety risks posed by use of its Big Kid booster seat in its product packaging and labeling (or elsewhere) was unfair, deceptive, fraudulent, or unconscionable;

G.     Whether Evenflo is liable to Plaintiff and Class members for damages under state consumer protection statutes;

H.     Whether an injunction should be issued requiring Evenflo to: (i) recall all Big Kid model booster seats still in use; (ii) cease selling Big Kid model booster seats; and/or (iii) add labeling to all future Big Kid model booster seats warning consumers of the dangers associated with their use;

I.     Whether Plaintiff and Class members are entitled to attorneys' fees, prejudgment interest, and costs, and if so, in what amount.

105.     Plaintiff and Class members have all suffered harm and damages as a result of Evenflo's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single

forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism—including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually—substantially outweigh potential difficulties in management of this class action. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy at law. The class treatment of common questions of law and fact also is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. Additionally, Evenflo has acted and failed to act on grounds generally applicable to Plaintiff and the Class and that require court imposition of uniform relief to ensure compatible standards of conduct toward the Class, thereby making appropriate equitable relief to the Class as a whole within the meaning of Rules 23(b)(1) and (b)(2).

106.     Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

A.     **Claims Brought on Behalf of the Pennsylvania Subclass**

**COUNT I: VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 PA. CONS. STAT. § 201-1 ET SEQ.)**

107.     Plaintiff Hailey Lechner ("Pennsylvania Plaintiff") hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

108.     This claim is brought by Pennsylvania Plaintiff on behalf of the Pennsylvania Subclass.

109.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including representing that

goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised and certified; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 Pa. Cons. Stat. § 201-2(4).

110.   Evenflo, Pennsylvania Plaintiff, and Pennsylvania Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

111.   Pennsylvania Plaintiff purchased an Evenflo Big Kid booster seat primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

112.   All of the acts complained of herein were perpetrated by Evenflo in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

113.   In the course of its business, Evenflo willfully failed to disclose the safety risks posed by its Big Kid booster seats, which put children's health and wellbeing at serious risk in side-impact car crashes. Evenflo also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of its Big Kid model booster seats.

114.   Evenflo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Pennsylvania Plaintiff and the Pennsylvania Subclass members, about the true safety risks posed by its Big Kid booster seats.

115.   Evenflo intentionally and knowingly misrepresented material facts regarding its Big Kid model booster seats with intent to mislead Pennsylvania Plaintiff and the Pennsylvania Subclass.

116.    Evenflo knew or should have known that its conduct violated the Pennsylvania CPL.

117.    Evenflo owed Pennsylvania Plaintiff and the Pennsylvania Subclass a duty to disclose the truth about the safety risks posed by its Big Kid model booster seats, because Evenflo:

    a.    Possessed exclusive knowledge about the testing of these seats;

    b.    Intentionally concealed the foregoing from Plaintiff and the Pennsylvania Subclass; and/or

    c.    Made incomplete and misleading representations that its Big Kid model seats were "side impact tested," while purposefully withholding material facts from Pennsylvania Plaintiff and the Pennsylvania Subclass that contradicted these representations.

118.    Evenflo's omissions and/or misrepresentations about the safety of its Big Kid model booster seats were material to Pennsylvania Plaintiff and the Pennsylvania Subclass.

119.    Pennsylvania Plaintiff and the Pennsylvania Subclass suffered ascertainable loss caused by Evenflo's misrepresentations and its concealment of and failure to disclose material information. Pennsylvania Plaintiff and the Pennsylvania Subclass members would not have purchased Big Kid model booster seats but for Evenflo's violations of the Pennsylvania CPL.

120.    Evenflo had an ongoing duty to all Evenflo customers to refrain from unfair and deceptive practices under the Pennsylvania CPL. As a direct and proximate result of Evenflo's violations of the Pennsylvania CPL, Pennsylvania Plaintiff and the Pennsylvania Subclass have suffered injury-in-fact and/or actual damage.

121.    Evenflo's violations present a continuing risk to Pennsylvania Plaintiff as well as to the general public. Evenflo's unlawful acts and practices complained of herein affect the public interest.

122.    Evenflo is liable to Pennsylvania Plaintiff and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a). Pennsylvania Plaintiff and the Pennsylvania Subclass are also entitled to an award of punitive damages given that Evenflo's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**B.    Claims Brought on Behalf of the Multistate Class**

**COUNT II: VIOLATION OF VARIOUS CONSUMER PROTECTION LAWS**

123.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

124.    Plaintiff brings her claim under Count II on her own behalf, and on behalf of the following:

> All persons in any state who purchased an Evenflo "Big Kid" booster seat between 2008 and the present.

125.    Evenflo had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of its Big Kid booster seats.

126.    Had Evenflo not engaged in the deceptive conduct described above, Plaintiff and the Class members would not have purchased Evenflo's Big Kid model booster seats.

127.    Evenflo's deceptive, unconscionable or fraudulent representations and material omissions to consumers and the public, including Plaintiff, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below:

a.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

b.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*;

c.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

d.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

e.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 2-1 10a, *et seq.*;

f.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, *et seq.* and 2531, *et seq.*;

g.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

h.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201 *et seq.*;

i.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-1, *et seq.*;

j.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

k.      Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS §505/1, *et seq.*;

l.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

m.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.170, *et seq.*;

n.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

o.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

p.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. § 445.90 1, *et seq.*;

q.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325D.43, *et seq.*; 325 F.67, *et seq.*; and 325F.68 *et seq.*;

r.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Ann. Missouri Stat. § 407.010, *et seq.*;

s.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of MT Code § 30-14-101 *et seq.*;

t.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

u.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. § 598.0903, *et seq.*;

v.  Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et seq.*;

x.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*;

y.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349 *et seq.* and 350-e, *et seq.*;

z.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-12-01, *et seq.*, and 51-15-01, *et seq.*;

bb.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. § 15 751, *et seq.*;

cc.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 6464.605, *et seq.*;

dd.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

ee.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

ff.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq.*;

gg.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101, *et seq.*;

hh.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

ii.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et seq.*;

jj.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

kk.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq.*; and

ll.    Evenflo has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*

128.    Plaintiff and members of the Class relied upon Evenflo's misrepresentations and/or omissions in buying their Big Kid model booster seats.

129.    Plaintiff will provide any required notice to appropriate entities regarding Evenflo's unfair and deceptive trade practices.[16]

130.    As a direct and proximate result of Evenflo's wrongful conduct, Plaintiff and Class members have been damaged by their purchase of Big Kid model booster seats.

131.    As a direct and proximate result of Evenflo's wrongful conduct, Plaintiff and the Class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.

---

[16] After satisfaction of their respective notice requirements, Plaintiff will seek permission to add claims, under Count II, for violation of the consumer protection laws of the following states: Alabama, California, Georgia, Indiana, Maine, Massachusetts, Texas, West Virginia and Wyoming.

## COUNT III: FRAUDULENT CONCEALMENT

132.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

133.    Plaintiff brings her claim under Count III on her own behalf, and on behalf of the following:

> All persons in any state who purchased an Evenflo "Big Kid" booster seat between 2008 and the present.

134.    Plaintiff asserts claims under the law of fraudulent concealment of the fifty states, which is materially the same under the laws of each state.

135.    Evenflo had an independent duty to disclose the truth about the safety risks posed by its Big Kid booster seats because these seats put children's health and wellbeing at serious risk in side impact car crashes. Plaintiff and Class members relied on Evenflo's material misrepresentations and omissions regarding the safety of Evenflo's Big Kid booster seats.

136.    Evenflo's failure to disclose was intentional and reflects a reckless disregard for the truth. Evenflo knew about the safety risks posed by its Big Kid booster seats, but intentionally failed to disclose that material fact to consumers and, as set forth herein, continues to conceal that fact through untrue and misleading statements to the public.

137.    Plaintiff and the Class members were induced to act by Evenflo's fraudulent concealment of material facts regarding the safety of its Big Kid model booster seats. Had Plaintiff and the Class been told of the defective nature of Evenflo's seats, they would not have purchased such products.

138.    Plaintiff and the Class members had a reasonable expectation that the defective products they were purchasing for infants and children were safe. Evenflo reasonably could have

anticipated and intended that Plaintiff and the Class purchased such products in part based upon such expectations and assumptions, and intended them to do so.

139.    Evenflo's suppression and omission of material facts associated with the safety risks of Big Kid model booster seats occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

140.    In failing to disclose the safety risks of Big Kid model booster seats, Evenflo concealed material facts and breached its duty to Plaintiff and the Class not to do so.

141.    In addition to failing to disclose information it had a duty to disclose, as described above, Evenflo actively concealed material information regarding the safety risks posed by its Big Kid model booster seats.

142.    As a direct and proximate result of Evenflo's acts of concealment and suppression, Plaintiff and the Class have suffered and will continue to suffer actual economic damages as detailed above.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in her favor and against Evenflo, as follows:

A.    A determination that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure Rule 23, and for an order certifying this case as a class action, appointing Plaintiff as Class representative as reflected above, and appointing Plaintiff's counsel as Class Counsel;

B.    A declaration that Evenflo's failure to disclose the dangers associated with using its Big Kid model booster seats was unfair, deceptive, fraudulent, wrongful, and unlawful;

C.      Restitution for all Big Kid model booster seats purchased by Plaintiff and the Class, in an amount to be determined at trial;

D.      Disgorgement of the ill-gotten gains derived by Evenflo from its misconduct;

E.      Actual damages;

F.      Statutory damages;

G.      Punitive damages;

H.      Treble damages;

I.      Compensatory damages caused by Evenflo's unfair or deceptive practices; along with exemplary damages to Plaintiff and each Class member for each violation;

J.      A permanent injunction requiring Evenflo to: (i) recall all Big Kid model booster seats still in use; (ii) cease selling Big Kid model booster seats; and (iii) add labeling to all future Big Kid model booster seats warning consumers of the dangers associated with their use;

K.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

L.      An order awarding Plaintiff and the Class their attorney's fees, costs, and expenses incurred in connection with this action; and

M.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: March 2, 2020                Respectfully submitted,

                                  /s/ Jessica R. MacAuley
                                  Jessica R. MacAuley (BBO #685983)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, Massachusetts 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
Email: jmacauley@hbsslaw.com

Steve W. Berman (*pro hac vice* to be filed)
Thomas E. Loeser (*pro hac vice* to be filed)
Ted Wojcik (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: toml@hbsslaw.com
Email: tedw@hbsslaw.com

Jeffrey S. Goldenberg (*pro hac vice* to be filed)
Todd B. Naylor (*pro hac vice* to be filed)
One West Fourth Street, 18th Floor
Cincinnati, OH  45202-3604
jgoldenberg@gs-legal.com
Telephone: (513) 345-8291
Facsimile: (513) 345-8294

*Attorneys for Plaintiff and the*
*Proposed Class*